

FILED

Lisa Chen

3117 Merced Ave

El Monte, CA 91733

(626) 410-8307

lisahongchen@gmail.com

2025 MAY 23 PM 3: 45

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF
LOS ANGELES

BY:

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Bernard Taruc,
Plaintiff,

Case No.: 5:25-cv-01031-CV (JDEx)

v.

Gourmet Chen Inc. (Dissolved),
Defendant.

*Request*
~~MOTION~~ TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS
OR, IN THE ALTERNATIVE, TO SET ASIDE DEFAULT

COMES NOW, the undersigned, appearing specially and not submitting to the jurisdiction of the court, and respectfully moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process, or, in the alternative, to set aside any entry of default under Rule 55(c). In support, the movant states the following:

I. BACKGROUND

1. Plaintiff filed the Complaint in this matter on or about 04/29/2025

2. The named Defendant, Gourmet Chen INC., ceased operations and was dissolved on 01/07/2025, well before this action was initiated.

3. Gourmet Chen INC. no longer exists as a legal entity and is not subject to service of process.

4. The undersigned has not been personally served, and was not the registered agent or proper recipient for service at the time the complaint was filed.

5. The undersigned does not assume liability for a business that has been legally dissolved and no longer exists under the laws of the state of incorporation.

## II. ARGUMENT

### A. Improper Service Requires Dismissal (Rule 12(b)(5)

Service of process must comply with Rule 4. Because the business was dissolved and no registered agent existed at the time of service, and because the undersigned was never properly served, the service is defective. Therefore, this Court lacks jurisdiction over the defendant.

### B. Alternatively, Default Should Be Set Aside (Rule 55(c))

If any default has been entered, it must be set aside for good cause:
1. Prompt action: The undersigned brings this motion immediately upon learning of the action.
2. Meritorious defense: The defendant business does not exist and cannot be held liable.
3. No undue prejudice: Plaintiff suffers no prejudice from this correction, especially since they named a defunct entity.

## III. CONCLUSION

For the reasons stated above, the undersigned respectfully requests this Honorable Court to:
1. Dismiss the action against the dissolved business entity; or
2. Set aside any entry of default; and
3. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

_____

Lisa Chen

Former Owner of Gourmet Chen INC.

Date: 05/23/2025

CERTIFICATE OF SERVICE

I hereby certify that on 05/23/2025 I served a true and correct copy of the foregoing Motion by mail to:

Jason J. Kim, Esq.

SO. CAL. EQUAL ACCESS GROUP

101 S. Western Ave., Second Floor

Los Angeles, CA 90004

05 / 23 / 25

## UNILATERAL RELEASE AGREEMENT

This Unilateral Release Agreement ("Agreement") is entered into and effective as of January 1/7 2025 (the "Effective Date"), by and between Great Hope Investments, LLC ("Landlord") and Lisa Hong Chen ("Tenant").

### RECITALS

A. Landlord and Tenant entered into that certain Lease dated December 31, 2015 (the "Lease") relating to that certain property located at 12052 Valley Boulevard, El Monte, CA (the "Property").

B. Landlord and Tenant entered into an Amendment to the Lease dated December 12, 2020 (the "Amendment") relating to the Property, extending the lease five (5) years, ending on December 7, 2025.

C. Tenant now desires to sublease the Property to Alpha TC Inc. starting January 1/7 2025. Any extension or agreement between Alpha TC Inc. and Landlord will be addressed in a separate agreement.

D. Tenant agrees to relinquish any rights to the return Security Deposit in the Lease in the amount of Seven Thousand Two Hundred Dollars ($7,200).

E. Concurrently and contingent on Tenant making full payment to Landlord in the amount of Two Thousand Eight Hundred Dollars ($2,800) (the "Additional Payment Amount"), the parties desire to execute this Agreement.

F. NOW THEREFORE, in consideration of the foregoing facts and the unilateral agreement and covenants set forth herein, the parties agree as follows:

### AGREEMENT

1. Additional Payment Amount. Concurrently with execution of this Agreement, and as a condition to its effectiveness, Tenant will pay Landlord by cash or wire transfer the Additional Payment Amount.

2. No Admission. By entering into this Agreement, Tenant is admitting to no sufficiency of any claims, allegations, assertions, contentions or positions of the other party hereto, or to the sufficiency of any defenses to any such claims, allegations, assertions, contentions or positions.

3. Release. Tenant, on behalf of himself/herself, his/hers children and spouses, including minor children, his/hers heirs, executors, administrators and assigns, and in consideration of the facts and agreements recited above, which consideration is hereby conclusively acknowledged, hereby releases, acquits and forever discharges Landlord, as well as their children and spouses and their heirs, affiliates, executors, administrators and assigns from all claims, causes of action, demands or liabilities of whatever nature, whether constituting property damage, or any other type or category of damage, anticipated or unanticipated, known or unknown, which may presently, or in the future, exist with respect to any matters relating directly or indirectly to the Lease or the Property. The releases herein extend to any and all claims or demands for costs and attorney's fees incurred.

Tenant further agrees that he/she will not institute any action, claim or proceeding in any court or other tribunal for relief based in whole or in part or by any action, claim or demand from which the Landlord is released under the terms of this Agreement.

4. <u>Representation</u>. Tenant hereby represents and warrants to Landlord that it (i) knows of no claims against itself or Landlord relating to or arising out of this Agreement that are not covered by the releases contained in Section 3 and (ii) has neither assigned nor transferred any of the claims released herein to any person or entity and no person or entity has subrogated to or has any interest or rights in any such claims.

5. <u>Release of all Unknown Claims and Waiver of Civil Code Section 1542</u>. With respect to the matters being released pursuant to the terms of this Agreement, Tenant voluntarily and unconditionally waives each and every right which it may have under Section 1542 of the Civil Code of the State of California and any similar law of any state or territory of the United States. Section 1542 reads as follows:

   1542. *Certain claims not affected by general release. "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."*

6. <u>Confidentiality</u>. Subject to the terms and conditions of Section 7 below, each party acknowledges the confidential nature of the terms and conditions of this Agreement (including the fact that a payment is being made and the amount thereof) (collectively, the "Confidential Information") and agrees that it shall not (a) disclose any of such Confidential Information to any person or entity, except to such party's advisors and other representatives who need to know the Confidential Information to assist such party, or act on its behalf, to exercise its rights or perform its obligations under this Agreement, or (b) use the Confidential Information, or permit it to be accessed or used, for any purpose other than to exercise its rights or perform its obligations under this Agreement. Tenant shall be responsible for any breach of this Section caused by any of its advisors or other representatives. Notwithstanding the foregoing, if any Confidential Information is permissibly disclosed under Section 7 below, such information will no longer be deemed "Confidential Information" for the purposes of this Section. For purposes of this Agreement, Landlord and Tenant are referred to collectively as the "parties" and individually as a "party".

7. <u>Non-Disparagement</u>.

   a. Tenant party shall not (orally or in writing) publicly disclose or issue any press release, make any other public statement, or otherwise communicate with the media, concerning the termination of the Agreement, the existence of this Agreement or the subject matter hereof, without the prior written approval of the other party (which may be granted or withheld in such other party's sole and absolute discretion), except to the extent that such party (based on the reasonable advice of counsel) is required to make any public disclosure or filing regarding the subject matter of this Agreement (i) by applicable law or (ii) in connection with enforcing its rights under this Agreement.

   b. Tenant shall not make, publish or communicate to any person or entity or in any public forum any comments or statements (written or oral) that intentionally seek to denigrate or disparage, or are detrimental to, the reputation or stature of the other party or its businesses, or any of its employees, directors and officers.

8. <u>Severability</u>. If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

Case 5:25-cv-01031-CV-PVC    Document 13    Filed 05/23/25    Page 8 of 12   Page ID
#:64

9.  Expenses. Each party shall pay its own costs and expenses in connection with the drafting, negotiation and execution of this Agreement (including the fees and expenses of its advisors and representatives).

10. Entire Agreement. This Agreement is the sole and entire agreement of the parties regarding the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, regarding such subject matter. The headings in this Agreement are for reference only and do not affect the interpretation of this Agreement. This Agreement, and each of the terms and provisions hereof, may only be amended, modified, waived, or supplemented by an agreement in writing signed by each party.

11. Miscellaneous.

   a.  This Agreement shall be construed and interpreted according to the laws of the State of California. The exclusive venue for any and all actions arising out of or relating to this Agreement including, but not limited to, actions to enforce its terms or prevent or remedy a breach thereof, shall be the Superior Court of the State of California for the County of Los Angeles.

   b.  This Agreement may be executed in multiple counterparts or by counterpart signature pages, which may be facsimile copies, and which shall be attached to the original. Upon such execution and/or attachment, this Agreement shall have the same effect as if all signatories had signed the same page of the same original. In making proof of this Agreement, a party shall not be required to account for all executed copies of this Agreement.

   c.  In the event of litigation relating to this Agreement, Landlord shall be entitled to reasonable attorneys' fees and costs.

   d.  Each party has cooperated in the drafting and preparation of this Agreement. Hence, in any construction to be made of this Agreement, the same shall not be construed against any party.

   e.  Each party acknowledges and agrees that the execution of this Release is free and voluntary and that such party has had the opportunity to consult independent legal counsel.

   f.  This Agreement will be effective when signed by Landlord and Tenant and receipt by Landlord of the Additional Payment Amount.

IN WITNESS WHEREOF, each party has executed this Agreement as of the Effective Date.

Landlord: _____

Name:    Great Hope Investments, LLC

Tenant: _____

Name:    Lisa Hong Chen

# BILL OF SALE

Gourmet Chen Inc., owner of Fanta Chinese Food, hereby called seller, agrees to sell Fanta Chinese Food located at 12052 Valley Blvd., El Monte, CA. 91732, to Alpha TC Inc., hereby called buyer.

Both parties mutually agree as follows:

1. Sales price is thirty-one thousand dollars ($31,000).

2. Buyer will hand thirty-one thousand dollars ($31,000) on January 7, 2025 to pay off the purchase price.

3. Buyer will take over this shop on January 8, 2025.

4. Equipment and fixtures are estimated at five thousand dollars ($5,000).

5. Buyer will pay sales tax on used equipment to the California Department of Tax and Fee Administration.

6. Buyer will get their own insurance and assume full responsibility from January 8, 2025.

7. Buyer will not be responsible for taxes or liabilities owed by the previous owner.

In witness whereof, the parties hereto have executed this sales as of the date written above.

_____
Lisa Hong Chen, Seller
CEO, Gourmet Chen Inc.

1/2/25
_____
Date

_____
Teng Wang, Buyer
CEO, Alpha TC Inc.

01/02/25
_____
Date

_____
Diana Chiu, Witness

1·2·2025
_____
Date

# BILL OF SALE

Gourmet Chen Inc., owner of Panda Chinese Food, hereby called seller, agrees to sell Panda Chinese Food located at 12072 Valley Blvd., El Monte, CA, 91732, to Alpha TC Inc., hereby called buyer.

Both parties mutually agree as follows:

1. **Sales price is thirty-one thousand dollars ($31,000).**
2. **Buyer will send thirty-one thousand dollars ($31,000)** on **January 7, 2025** to pay off the purchase price.
3. **Buyer will take over this shop on January 8, 2025.**
4. **Equipment and fixtures are estimated at five thousand dollars ($5,000).**
5. **Buyer will pay sales tax** on used equipment to the California Department of Tax and Fee Administration.
6. **Buyer will get their own insurance and assume full responsibility from January 8, 2025.**
7. **Buyer will not be responsible for taxes or liabilities owed by the previous owner.**

In witness whereof, the parties hereto have executed this sales as of the date written above.

Gourmet Chen Inc.

Date

CEO, Alpha TC Inc.

Date